# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID SKEBERDIS, ) | |
| ) | |
| Plaintiff, ) | Case No. 17-cv-6261 |
| ) | |
| v. ) | Judge Robert M. Dow, Jr. |
| ) | |
| PATRICK KINNALLY and KINNALLY, ) | |
| FLAHERTY, KRENTZ, LORAN, ) | |
| HODGE & MASUR, P.C., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' motion [7] to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Defendants' motion [7] is granted and Plaintiff's complaint is dismissed in its entirety with prejudice. The Court will issue a final judgment and close this case.

**I.      Background**

Plaintiff David Skeberdis ("Plaintiff") brings this action against Patrick Kinnally and Kinnally, Flaherty, Krentz, Loran, Hodge & Masur, P.C. ("Defendants") for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). According to Plaintiff's complaint,[1] Defendants, acting as debt collectors, initiated a lawsuit in September 2016 against Plaintiff in Illinois state court in order to collect a civil debt of approximately $23,000. [See 1, ¶ 7.] This lawsuit was filed on behalf of the City of Aurora, Illinois, and the initial complaint alleged that Plaintiff incurred this approximately $23,000 debt as a result of an "adjudicatory decision" by Aurora. [*Id.*] This state court lawsuit was filed in Kane County,

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Illinois, pursuant to Illinois's venue statute. [*Id.*] Plaintiff, however, resides in DuPage County, Illinois. [*Id.*, ¶ 6.]

According to Plaintiff, this reference to an "adjudicatory decision" in the state court lawsuit as the source for his alleged debt was false. Moreover, Plaintiff alleges that Defendants willfully misrepresented the nature of this $23,000 obligation as being the result of an "adjudicatory decision" for the purpose of fixing the state court lawsuit's venue in Kane County rather than in DuPage County, where Plaintiff resides. [*Id.*, ¶ 11.] Plaintiff further alleges that Defendants later amended the complaint to remove the "adjudicatory decision" reference and instead plead only that the $23,000 debt resulted from an implied contract between the City of Aurora and Plaintiff. [*Id.*, ¶ 8.]

Defendants have attached to their motion to dismiss the state court complaint that was filed in September 2016.[2] [See 7, Ex. B (State Court Compl.).] According to this complaint, the City of Aurora removed more than 300 birds from Plaintiff's property in October 2012. [*Id.*,

---

[2] A Rule 12(b)(6) motion must be decided only "based on the complaint, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691, 702 (N.D. Ill. 2016) (internal quotation marks and citation omitted). Defendants have requested that the Court consider this state court complaint without converting their Rule 12(b)(6) motion into a motion for summary judgment. [See 7, at 2 n.1.] The Court will do so for two reasons. First, the state court complaint is a public record: courts routinely take judicial notice of such documents. See Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it * * * can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (explaining that a court may take judicial notice of matters in public record, including court documents, in deciding a motion to dismiss without converting it to a motion for summary judgment). Second, the state court lawsuit is both critical to Plaintiff's complaint and referred to in it; in fact, the state court complaint forms the entire basis of Plaintiff's FDCPA claim. And Plaintiff has not challenged the authenticity of the document that Defendants have submitted. Therefore, the Court can consider the state court complaint without converting this motion to dismiss into a motion for summary judgment. See *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (considering a critical document referred to in a complaint that is presented by a defendant "prevents a plaintiff from evading dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proves his claim has no merit") (internal alterations and citation omitted); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

[¶ 3.] The complaint states that this removal was undertaken pursuant to a court order. [*Id.*, at Ex. 1.] Aurora engaged and paid a company called Restoration Techs for cleaning and bio-recovery services of Plaintiff's property after the birds were removed. [*Id.*] The state court complaint seeks reimbursement from Plaintiff for Aurora's payment to Restoration Techs, along with other expenses Aurora incurred after the removal of birds from Plaintiff's property, stating that "[b]ased on a reasonable interpretation of the course of dealing" between Aurora and Plaintiff, Aurora expected to be compensated for these services by Plaintiff. [*Id.*, ¶¶ 4–12.] The state court complaint also claims that the state court has jurisdiction "to enforce the City's adjudicatory decision" against Plaintiff. [See *id.*, ¶ 13.] Although this "adjudicatory decision" is not identified in the state court complaint itself, Defendants have also attached to their motion to dismiss (1) an administrative search warrant, signed by a judge in Kane County, authorizing an inspection of Plaintiff's property and removal of any animals from the property that are in violation of Aurora's municipal ordinances; and (2) the return of this administrative search warrant detailing the birds that were removed from Plaintiff's property pursuant to the warrant. [See 7, Exs. A, C.][3]

Plaintiff alleges that Defendants' reference to an "adjudicatory decision" in this state court complaint violates two provisions of the FDCPA. First, Plaintiff claims that this reference violates the FDCPA's prohibition against using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, because it is false. Second, Plaintiff claims that this reference to an "adjudicatory decision" in

---

[3] These are public records of which the Court also may take judicial notice. See *Henson*, 29 F.3d at 284; *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *Archer v. Chisholm*, 188 F. Supp. 3d 866, 879 n.10 (E.D. Wis. 2016) (taking judicial notice of warrants as publicly available court records on a motion to dismiss); *Atkins v. Hasan*, 2015 WL 3862724, at *6 (N.D. Ill. June 22, 2015) (taking judicial notice of an arrest warrant on a Rule 12(b)(6) motion to dismiss); see also *Bryan v. City of Carlsbad*, 297 F. Supp. 3d 1107, 1115–16 (S.D. Cal. 2018) (taking judicial notice of the existence of an inspection warrant and the return of this inspection warrant, but not the "reasonably disputable facts they contain").

the state court lawsuit was made in order to fix venue in a county other than the county in which Plaintiff resides in violation of the FDCPA's provision that a debt collector bringing any legal action on a debt against any consumer shall "bring such action only in the judicial district or similar legal entity (A) in which such consumer signed the contract sued upon; or (B) in which such consumer resides at the commencement of the action," 15 U.S.C. § 1692i(a)(2). [*Id.*, ¶¶ 9–11.]

After Plaintiff initiated the instant lawsuit, Defendants filed a motion [7] to dismiss Plaintiff's complaint in its entirety, which is currently before the Court.

## II. Legal Standard

To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual

allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

**III. Analysis**

Plaintiff brings one claim in his complaint for the violation of the FDCPA, based solely on the state court complaint filed by Defendants in Kane County in September 2016. Defendants make four arguments in support of their Rule 12(b)(6) motion to dismiss Plaintiff's complaint. First, Defendants argue that the amount sought to be collected in the state court action does not meet the statutory definition of a "debt" under the FDCPA and, therefore, Plaintiff fails to state a claim. [7, at 5–7.] Second, Defendants argue that the reference to an "adjudicatory decision" in the state court complaint is accurate and thus does not violate the FDCPA. [*Id.*, at 4–5.] Third, Defendants argue that the "adjudicatory decision" reference, even if false, is immaterial. [*Id.*, at 7–9.] Finally, Defendants argue that Plaintiff lacks standing to pursue his FDCPA claim because he has not articulated how he has suffered a concrete injury. [*Id.*, at 9–10.]

The FDCPA was enacted in order to "protect consumers from abusive, deceptive, and unfair debt collection practices by prohibiting the use of certain collection methods in a debt collector's attempt to collect a 'debt' from a consumer." *Berman v. GC Servs. Ltd. P'ship*, 146 F.3d 482, 484 (7th Cir. 1998). A "debt" is defined in the statute as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Not all obligations to pay money constitute "debts" under this definition, which serves to limit the scope of the FDCPA. *Berman*, 146 F.3d at 484.

The Seventh Circuit has articulated a two-part inquiry to use in determining whether a particular obligation falls into this statutory definition: this inquiry considers both parts of the definition separately. See *Berman*, 146 F.3d at 484. First, a court must ask whether the obligation sought to be collected is "of a consumer to pay money arising out of a transaction." *Id.* (citing *Newman v. Boehm, Pearlstein & Bright, Ltd.*, 119 F.3d 477, 481–82 (7th Cir. 1997)). If this question is answered in the affirmative, a court must then assess whether the "money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." *Id.* (citing *Newman*, 119 F.3d at 481–82); see also *Vasilakos v. Blitt & Gaines, P.C.*, 2013 WL 4047634, at *2 (N.D. Ill. Aug. 8, 2013); *Thone Phan v. Gartner Law Offices, Inc.*, 2012 WL 3993031, at *2 (N.D. Ill. Sept. 10, 2012).

Regarding the first part of this inquiry, the Seventh Circuit has stated that the term "transaction," while not defined in the FDCPA itself, is "a broad reference to many different types of business dealings between parties." *Franklin v. Parking Revenue Recovery Servs., Inc.*, 832 F.3d 741, 744 (7th Cir. 2016) (quoting *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1325 (7th Cir. 1997)). But courts have generally limited the term "transaction" in the FDCPA context to refer to a consensual transaction that has been contracted for by parties. See *Berman*, 146 F.3d at 484 (interpreting the statutory definition of "debt" to refer to "an obligation to pay arising from a consensual transaction, where parties negotiate or contract for consumer-related goods or services"); *Reid v. Am. Traffic Sols., Inc.*, 2010 WL 5289108, at *4 (S.D. Ill. Dec. 20, 2010) ("Implicit in the understanding of a transaction for FDCPA purposes is that the business deal or agreement is consensual and that the parties have negotiated or contracted for consumer goods or services."); *Gulley v. Markov & Krasny Assocs., P.C.*, 2011 WL 1630670, at *2 (N.D. Ill. Apr. 26, 2011); *Williams v. Allocated Business Mgmt., LLC*, 2010

WL 2330371, at *2 (N.D. Ill. June 8, 2010); *Walton v. Claybridge Homeowners Assoc. Inc.*, 2009 WL 700225, at *3–4 (S.D. Ind. Mar. 16, 2009). In other words, the FDCPA's reach is limited "to only those obligations that are created by the *contracts* the parties used to give legal force to their transaction." *Franklin*, 832 F.3d at 744. Therefore, efforts to collect on obligations that are created by some other kind of legal authority, such as tort law or municipal law, would not fall under the FDCPA's purview. *Id.*; see also *Gulley v. Markoff & Krasny*, 664 F.3d 1073, 1075 (7th Cir. 2011) (holding that a municipal fine is not a "debt" under the FDCPA because it does not stem from a consensual transaction); *Williams*, 2010 WL 2330371, at *2 (an obligation to pay tort damages is not a "debt" under the FDCPA); *Reid*, 2010 WL 5289108, at *4 (collecting cases and noting that efforts to collect obligations to pay resulting from shoplifting, child support orders, parking tickets, or automobile impoundment and storage fees are not "debts" for FDCPA purposes because such obligations are not the results of consensual transactions).

Plaintiff's complaint must be dismissed because the obligation on which Defendants have attempted to collect is not a "debt" under the FDCPA. In other words, Plaintiff's claim fails under the first part of the inquiry: what Defendants seek to collect in the September 2016 state court complaint is not an obligation "of a consumer to pay money arising out of a transaction." *Berman*, 146 F.3d at 484. The state court complaint alleges that the City of Aurora incurred expenses for bio-recovery and cleaning services at Plaintiff's property after removing hundreds of birds from the property pursuant to a court order authorizing this removal; Aurora passed a resolution authorizing payment to Restoration Techs, the company hired to perform these services; and Aurora is seeking to recoup these costs from Plaintiff himself. [See 7, Ex. B (State Court Compl.).] Defendants have also presented the Court with the administrative warrant,

7

signed by a judge, authorizing this bird removal. Moreover, Aurora's municipal code provides that "the city may ascertain and bill the owner or keeper of any animal that is being harbored or maintained in violation of this chapter the actual costs incurred by the city in seizing and confining such animal." Aurora, Illinois Code of Ordinances § 9-27(i).[4] And the state court complaint references Plaintiff's responsibility for complying with Aurora's municipal code. [See 7, Ex. B (State Court Compl.), ¶¶ 2–3, 6.]

Even construing the state court complaint in the light most favorable to Plaintiff, Defendants are not seeking to collect a "debt" as the term is defined in the FDCPA. Rather, the state court action seeks to recover an obligation that originates from Aurora municipal law and has been involuntarily imposed on Plaintiff based on a court order.[5] This obligation is not one from a transaction "where parties negotiate or contract for consumer-related goods or services." *Walton*, 2009 WL 700225, at *3 (quoting *Berman*, 146 F.3d at 484). Such a non-consensual obligation does not constitute an FDCPA debt, and efforts to collect it do not fall within the FDCPA's purview.[6] See *Gulley*, 664 F.3d at 1075; *Reid*, 2010 WL 5289108, at *5; see also

---

[4] The Court may take judicial notice of city ordinances. See *Toney v. Burris*, 829 F.2d 622, 626–27 (7th Cir. 1987); *Weller v. Paramedic Servs. of Ill., Inc.*, 297 F. Supp. 3d 836, 847 (N.D. Ill. 2018).

[5] The references to a "court order" in the state court complaint are separate from the "adjudicatory decision" reference that forms the gravamen of Plaintiff's allegations. [See 7, Ex. B (State Court Compl.), Ex. 1, at 1–2.] The Court is thus not addressing here Plaintiff's allegation that the "adjudicatory decision" reference is false—the Court must accept as true at this stage all of Plaintiff's well-pleaded factual allegations, including the allegation that this reference is a false one. See *Killingsworth*, 507 F.3d at 618. But whether or not the reference is true is ultimately irrelevant to the determination of whether the state court complaint seeks to recover an FDCPA debt.

[6] The Court also notes that Plaintiff does not allege that the state court complaint attempts to collect a debt that was incurred pursuant to a consensual transaction. Plaintiff merely alleges that the debt Defendants seek to collect was incurred "for household and personal reasons." [1, ¶ 6.] But this allegation only addresses the second part of the two-part inquiry the Seventh Circuit uses to determine whether an obligation constitutes an FDCPA "debt." See *Berman*, 146 F.3d at 484. Plaintiff does not allege that he had any contract or other transaction with the City of Aurora that created his obligation to pay, nor does he make any argument to that effect in opposition to Defendants' motion. [See 1; 13.]

*Shannon v. ACS State & Local Sols., Inc.*, 2008 WL 2277814, at *1 (D. Minn. May 30, 2008) ("County-levied fines and restitution meet none of the criteria of a FDCPA 'debt,' as defined.").

Plaintiff contends that Defendants' argument that the obligation at issue in the underlying state court action is not a debt under the FDCPA is "impeached directly" by the characterization of the debt in the state court complaint. [13, at 3–4.] Specifically, Plaintiff argues that the state court complaint both characterizes the obligation as one incurred in quasi-contract and avoids characterizing it as a municipal fine; therefore, nothing in the state court complaint indicates that the FDCPA does not apply here.

These arguments are unavailing. Plaintiff is correct that the state court complaint does not characterize the obligation as a "municipal fine." Plaintiff is also correct that the state court complaint uses terms potentially referring to a contractual relationship between the City of Aurora and Plaintiff, including "course of dealing," "breach of Defendant's contract with Plaintiff," and "contractual obligations." [See 7, Ex. B (State Court Compl.), ¶¶ 4, 10, 12.] But the way parties characterize a particular obligation does not control whether the obligation meets the FDCPA's definition of a debt. See *Franklin*, 832 F.3d at 744 (the fact that a nonpayment charge was sometimes referred to as a "fine" in underlying documents did not mean that the charge qualified a non-consensual fine for FDCPA purposes).

Instead, as the Seventh Circuit has stated, "[t]he crucial question is the legal source of the obligation." *Franklin*, 832 F.3d at 744. When contract law forms the basis of the obligation to pay, the obligation to pay is an FDCPA "debt." See *id.* at 744–45 (obligation to pay a nonpayment penalty to a parking lot arose from a contract formed when the customer parked in the parking lot, meaning this obligation was a debt under the FDCPA); see also *Berman*, 145 F.3d at 485–86 (the obligation to pay unemployment insurance contributions, although not a

"debt" under the FDCPA, did arise out of a consensual transaction because it arose out of the hiring of an employee); *Newman*, 119 F.3d at 481 (obligations to pay past-due condominium association assessments were FDCPA debts because these obligations arose in connection with the purchase of the homes themselves). But when the source of the obligation is something other than contract law, the FDCPA does not apply. See *Franklin*, 832 F.3d at 744; see also *Gulley*, 664 F.3d at 1075 ("[T]he municipal fines levied against [plaintiff] cannot reasonably be understood as 'debts' arising from consensual consumer transactions for goods and services."); *Reid*, 2010 WL 5289108, at *5 (fines for running red lights are not "debts" because "[t]hey are not the product of a negotiation or contract, explicit or implied, where the plaintiffs purchased the right to run red lights in order to accomplish personal or family purposes").

The state court complaint filed by Defendants seeks to collect a sum of money from Plaintiff based on a court order as authorized by a municipal ordinance allowing Aurora to recover costs incurred for the seizure of animals kept in violation of the city's municipal code. [See 7, Ex. B (State Court Compl.)] It does not seek to collect a sum of money from Plaintiff based on a contract or a negotiated transaction between Plaintiff and the City of Aurora. While at the motion to dismiss stage the Court must make all reasonable inferences in Plaintiff's favor, see *Killingsworth*, 507 F.3d at 618, it would not be reasonable to infer based on the state court complaint or the allegations in Plaintiff's complaint in the instant action that the obligation Defendants seek to collect meets the statutory definition of a debt. As such, Defendants' conduct in filing the state court complaint does not fall under the purview of the FDCPA, and Plaintiff's complaint must be dismissed.

Because the Court concludes that the FDCPA does not apply to the obligation at issue here, the Court need not address the Defendants' other arguments regarding the truth and

materiality of the "adjudicatory decision" reference in the state court complaint and Plaintiff's standing to bring his claims under the FDCPA. Moreover, as Plaintiff does not allege that Defendants have violated the FDCPA in any way beyond the filing of the state court complaint, this dismissal will be with prejudice.

**IV.     Conclusion**

For the reasons stated above, Defendants' motion [7] is granted and Plaintiff's complaint is dismissed in its entirety with prejudice. The Court will issue a final judgment and close this case.

Date:  June 21, 2018                                   _____
                                                       Robert M. Dow, Jr.
                                                       United States District Judge